Emmadean N. COMMANDER,
Plaintiff,

v.

The FIDELITY and CASUALTY COMPANY OF NEW YORK,
Defendant.

Civ. A. No. 349.

United States District Court
W. D. Virginia, Danville Division.

Oct. 8, 1955.

J. L. Williams, Danville, Va., and Edwin B. Meade (Meade, Talbott & Tate), Danville, Va., for plaintiff.

Horace G. Bass, and ·Sanford & Clement, Danville, Va., for defendant.

BARKSDALE, District Judge.

This is an action upon an insurance policy issued by defendant, The Fidelity and Casualty Company of New York, to Joseph C. Commander, the plaintiff, Emmadean N. Commander, being named therein as beneficiary. By the terms of the policy, the Company agreed to insure the insured on one airline trip between Newark, New Jersey, and Provincetown, Massachusetts, to be taken on July 8, 1953, and agreed to pay the beneficiary the principal sum of $25,000 if the insured lost his life by reason of injuries sustained during the trip, provided that the injuries sustained fell within the "Coverages" as set out in the policy. The insured did lose his life during the course of this trip, and this action has been instituted by the beneficiary to recover the face amount of the policy.

The Coverages, as set out in the policy, are as follows:

"This insurance shall apply only to such injuries· sustained following the purchase by or for the Insured of a transportation ticket from, or the issuance of a pass by, a Scheduled Airline during any portion of the first one wáy or round airline· trip covered by such transportation tick-et or pass between the Point of Departure and the Destination shown above, in consequence of: (a) boarding, riding as a passenger in, alighting from or coming in contact with any aircraft operated on a regular or special or chartered flight by a Civilian Scheduled Airline maintaining regular, published schedules and licensed for interstate, intrastate or international transportation of passengers by the Governmental· Authority having jurisdiction over Civil Aviation, or (b) while riding in or on a conveyance except a conveyance under the complete direction of the

Insured, provided or arranged for, directly or indirectly, by such airline or the authority controlling an established airport, or (c) while in transit at any airport at which said aircraft stops, or (d) exposure as a result of forced landing or disappearance of, or accident to, such aircraft. If within one year after the date of such disappearance or accident the Insured's body has not been found, it shall be presumed that he suffered loss of life from accidental bodily injury covered by this policy and sustained at the time of such disappearance or accident."

Also there appears in boldface type at the bottom of page 1 of the Policy, the following:

"This Limited Policy Provides Payment for Loss of Life, Limb or Sight and Other Specified Losses by Accidental Bodily Injury While a Passenger on Civilian Scheduled Airlines and Other Specified Conveyances or While at an Airport in Transit, or Due to Exposure, to the Extent Herein Provided."

The following policy provisions as to notice are also now pertinent:

"4. Written notice of injury on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury. In event of accidental death, immediate notice must be given to the Company.

"5. Such notice given by or in behalf of the Insured or Beneficiary, as the case may be, to the Company, at its General Office, 80 Maiden Lane, New York 8, New York, or to any authorized agent of the Company, with particulars sufficient to identify the Insured, shall be deemed to be notice to the Company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

Defendant has filed its motion for summary judgment, based upon the contention that the insured's injuries were not included within Coverage (a), and not being included in Coverage (a), the plaintiff cannot recover in this action. The plaintiff has filed her motion for summary judgment based upon the contention that the insured was included in Coverage (b), and that plaintiff was therefore entitled to recover regardless of whether or not insured's injuries were included in Coverage (a). A pretrial conference has been held, and upon the plaintiff's motion that she be allowed additional time within which to file countervailing affidavits to defendant's motion for summary judgment, additional time has been allowed plaintiff, which time has not yet expired. It appearing that both sides were ready for a hearing on plaintiff's motion for summary judgment, a hearing was held in open court on September 27, 1955, and defendant contending that plaintiff had not complied with the provisions of the policy with respect to notice, evidence was heard in open court upon the issue of whether or not the notice given by plaintiff to defendant complied with the policy requirements. It is therefore necessary for the court to make findings of fact and conclusions of law.

### General Facts.

The salient facts in this case are not in dispute, and appear from the pleadings, exhibits, affidavits, admissions, and the pretrial order.

Dr. J. C. Commander of Martinsville, Virginia, purchased a ticket from American Airlines, Inc., at Newark, N. J., for a trip by air on July 8, 1953, from Newark, N. J., to Provincetown, Mass., with a change of planes at Boston. The ticket shows that American Airlines collected $12.15 fare for the trip from Newark to Boston on its own line, Flight No. 332, and $7.82 fare from Boston to Provincetown over the connecting airline, Flight 410, with the notation "REQ." under the heading "Res. Status", meaning that American Airlines had requested a reservation on the connecting

airline for the flight from Boston to Provincetown scheduled to leave at 9:40 A.M. that same day. The Official Airlines Guide, which was in use by American Airlines at Newark, on page 653, shows that Provincetown-Boston Airline scheduled Flight 410 from Boston to Provincetown at 9:40 A.M., with the notation, "Every Flight makes a twenty minute connection with Boston-New York Flights of American, Eastern or Northeast", with the additional notation, "Interline Tickets honored on American, Eastern and Northeast Ticket Stock." The flight from Newark to Boston was accomplished without incident. The insured boarded the Provincetown-Boston plane at Boston for Flight 410 from Boston to Provincetown, but when this plane was a short distance from Provincetown the pilot made a forced landing in the water and insured disappeared, and although his body was never recovered he has not been seen or heard of since, and by the terms of the policy, one year having elapsed since the date of his disappearance, it is "presumed that he suffered loss of life from accidental bodily injury covered by this policy and sustained at the time of such disappearance or accident."

### Facts as to Notice.

When the insured procured the policy of insurance here in controversy at the Newark Airport, he gave it to a companion directing him to give it to the beneficiary, his wife, if anything happened to him. The friend delivered the policy to the plaintiff on July 12, 1953. Plaintiff, Emmadean Commander, the wife of the insured, heard the news of the accident and of her husband's disappearance during the afternoon of July 8, 1953, from friends who had heard the announcement on the radio. She was prostrated with grief and shock, and a doctor was called early the following morning. He found that she had not slept, and found it necessary to give her morphine or some similar sedative. Later, during that day, the insured's uncle, a practicing physician, came to see her and found her in a state of severe shock,

which continued for two or three weeks. The doctor prescribed sedatives daily during this period. It was reported to plaintiff that, after the airplane went down, her husband was first seen swimming, and later disappeared. The plaintiff and many others in the community did not believe he was dead. It was generally known that, on trips such as this, the insured was accustomed to carry one thousand to fifteen hundred dollars in cash on his person, and it was suspected that he might have gotten ashore, been robbed and kidnapped, and might possibly be suffering from amnesia. Plaintiff was so doubtful of her husband's death that, as soon as she felt well enough to travel, some time after August 14, 1953, she, accompanied by her mother-in-law and her husband's uncle, made a trip of about a week to Provincetown, in the hope of finding that the insured was still alive. However, they did not succeed in obtaining any additional information. Within a few days after her return to her home, on August 27, 1953, the plaintiff called an attorney, and the next day turned over to him seven or eight insurance policies of her husband's, including the policy here in controversy, in which she was beneficiary, and directed him to take the necessary steps for the collection of such sums as she might be entitled to. The attorney notified the defendant company by letter of September 1, 1953, of the accident, and requested forms for filing proof of loss. Although this letter was promptly received by defendant, defendant did not reply, nor did it furnish the forms for filing proof of loss pursuant to the subsequent request made by plaintiff's attorney by letter of September 16, 1953, and it is admitted that defendant has waived its requirements as to filing proofs of loss.

It is true that on July 10, 1953, two days after the accident, the plaintiff went to the office of the Clerk of the Circuit Court for the City of Martinsville, waived her right to qualify as personal representative of her husband, made oath that her husband had died on July 8, 1953, and consented to the appointment

of administrators. However, the plaintiff took this action only at the insistence of a business associate of her husband who told her that checks for rents and in payment of professional services were being received, that expenses had to be paid, and that it was absolutely necessary that someone be empowered to attend to these matters. Plaintiff insisted that she did not believe her husband was dead, and signed the papers only when assured by her husband's friend and the Clerk that everything would be null and void if her husband were found to be alive.

On August 14, 1953, the plaintiff signed a claim for the proceeds of her husband's policy issued by Metropolitan Life Insurance Company. Metropolitan's agent being satisfied himself of the insured's death, made three calls on her, insisting that she sign a claim for the proceeds of this insurance, and each time she refused to do so, stating that she still believed her husband was alive. She did not finally sign this claim until the agent assured her that the Metropolitan would only make an investigation after she signed the claim, and she agreed to sign on this assurance.

The plaintiff had some six or seven other policies of insurance, and filed no proofs of loss and made no claim on any of them, until she turned them over to an attorney along with the policy here in controversy, on August 28, 1953. No prejudice has been suffered by the defendant from the delay in receiving notice of the accident which resulted in the death of the insured. The accident was investigated by an air safety investigator, who filed his report on August 6, 1953, and this report has been available to the defendant.

I find as a fact that plaintiff gave notice of the accident to the defendant as soon as was reasonably possible.

I further find as a fact that the insured sustained injuries resulting in his death "while riding in or on a conveyance * * *, provided or arranged for, directly or indirectly, by American Airlines." I find that the airplane which the insured boarded at Boston for the flight to Provincetown was a "conveyance" within the meaning of the term as used in Coverage (b), and that this conveyance was arranged for, directly or indirectly, by American Airlines when it sold the insured a ticket on this airline for the very flight on which he met his death, collected his fare, and requested a reservation on this flight.

The policy provides, Standard Provisions 6:

"The Company upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within fifteen days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made."

I find as a fact that notice of the accident was mailed to the defendant from Martinsville, Virginia, on September 1, 1953, and it was admitted by defendant's agent that it was received within three days after mailing. I find as a fact that the notice was received on September 4, 1953, and although requested so to do in the letter of September 1, 1953, the defendant did not then furnish, nor has it ever furnished, forms for filing proof of loss. Forms for filing proof of loss were again requested by letter of September 16, 1953, but never furnished.

#### Conclusions of Law.

From the facts found, I conclude that this court has jurisdiction of this action and the parties thereto.

As to notice, it is conceded that Virginia Law is applicable. In the case of Glen Falls Indemnity Co. v. Harris, 168 Va. 438, 191 S.E. 644, an action on an accident policy, the policy required notice within twenty days, with the further

provisions that failure to give notice within that time should not invalidate a claim should it be shown not to have been reasonably possible. The accident occurred on March 28, 1935, and notice was not given until May 22, 1935. Plaintiff contended that, by reason of his physical condition, notice was given as soon as was reasonably possible. The jury having found for the plaintiff, the court held that, under the facts of the case, the question of notice was one to be determined by the jury.

■■ There having been no demand for a jury in this case, I tried the facts on this issue, and I have found as a fact that, under the circumstances, the notice was given as soon as was reasonably possible. I therefore conclude as a matter of law that the delay of the plaintiff in giving notice constitutes no bar to her recovery.

. ■ Defendant contends that the insured was not included in Coverage (a) and that, construing the policy as a whole, the plaintiff is not entitled to recover under Coverage (b) because the two are inconsistent. I disagree. The policy provides five coverages, and they are in the disjunctive and not the conjunctive. It is my conclusion that plaintiff is entitled to recover if the accident which resulted in the insured's death falls within the ambit of any one of the coverages.

■ It seems to me that this accident is clearly included within Coverage (b). I have found as a fact that the flight from Boston to Provincetown was arranged, directly or indirectly (I think directly), by American Airlines, and defendant contends that the airplane which undertook the flight from Boston to Provincetown was not a "conveyance" within the meaning of the policy; that the word "conveyance" as used in Coverage (b) should be construed to mean "conveyance other than an airplane". This seems to me to contravene the accepted rules for construing insurance policies. The policy was prepared by the defendant, and should be given a liberal construction. This rule was followed by Judge Groner in Gatewood v. Continental General Life Insurance Co., D.C., 23 F.2d 211, 213. In that case, an unmounted saddle horse was held to be a "conveyance". The definition of "conveyance" as "anything which serves as a means or way of carrying something from one place to another, and as used in an insurance policy means some vehicle or instrument other than the legs of a man walking and carrying his own body."

■ As defendant failed to furnish forms for proof of loss, although requested to do so by letter of September 1, 1953, received on September 4, 1953, I conclude that under the terms of the policy the defendant waived its right to require formal proof of loss or other proof after the expiration of fifteen days, such waiver being effective on September 20, 1953. I therefore conclude that the face amount of the policy was due and payable by the defendant to the plaintiff on September 20, 1953.

I therefore conclude that the accident which resulted in insured's death was included in Coverage (b), and as I have already found that notice of the accident was given within a reasonable time, it is my final conclusion that plaintiff is entitled to a judgment in the sum of $25,-000, with interest from September 20, 1953, until paid, and the costs of this action.

An order will be entered accordingly.